## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DEBORAH HUTCHINSON (#401695)                    CIVIL ACTION

VERSUS

JOHNNIE JONES, WARDEN                           NO. 07-0356-FJP-DLD

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, this _____19th_____ day of May, 2009.

_____
**DOCIA L. DALBY**
**MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DEBORAH HUTCHINSON (#401695)                                    CIVIL ACTION

VERSUS

JOHNNIE JONES, WARDEN                                           NO. 07-0356-FJP-DLD

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner, Deborah Hutchinson, challenges her convictions and two 40-year concurrent sentences, entered in 1998 on one count of manslaughter and one count of attempted second degree murder.  The petitioner contends that the evidence was insufficient at trial to support her conviction, that the sentences were excessive, that the trial court erred in refusing to allow her to change her plea prior to trial, that the trial court erred in refusing to order a mental re-evaluation on the morning of trial, that the trial court erred in refusing to allow the presentation of evidence at trial relative to her mental condition and treatment history, that the trial court erred in failing to instruct the jury relative to an insanity defense, that her attorneys provided ineffective assistance at trial and on appeal, and that cumulative errors rendered the convictions constitutionally infirm.

The petitioner was initially indicted on one count of first degree murder and two counts of attempted first degree murder.  On the morning of trial, the indictment was formally amended to one count of second degree murder and two counts of attempted second degree murder.[1]  After a trial by jury conducted in May, 1998, the petitioner was found guilty of having committed

---

[1]       As further reflected in the state court minutes dated February 9, 1998, the indictment was in fact amended on that earlier date, in open court, with the defendant and her attorney present, almost three months prior to the morning of trial on May 5, 1998.

manslaughter relative to her uncle, attempted second degree murder relative to her mother, and aggravated battery relative to her brother.  She was sentenced on June 23, 1998, to serve concurrent forty-year sentences on the charges of manslaughter and attempted second degree murder.  The aggravated battery conviction was ultimately dismissed on a motion for post-verdict judgment of acquittal.

The petitioner appealed her convictions, contending (1) that the evidence was insufficient to support the verdict of attempted second degree murder, (2) that the trial court erred in imposing an excessive sentence, and (3) that the trial court erred in failing to advise her of the delays for seeking post-conviction relief.  On November 9, 2001, the convictions and sentences were affirmed by the Louisiana Court of Appeal for the First Circuit, with the matter being remanded for entry of formal written notice of the delays for seeking post-conviction relief.  On January 24, 2003, the petitioner's application for supervisory review in the Louisiana Supreme Court was denied.  State v. Hutchinson, 836 So.2d 34 (La. 2003).

In January, 2004, the petitioner filed an application for post-conviction relief in the state district court, asserting (1) that the evidence was insufficient to support the convictions, (2) that the punishment was excessive, (3) that the trial court erred in refusing to allow her to enter a dual plea of not guilty and not guilty by reason of insanity on the morning of trial, (4) that the trial court erred in denying a request on the morning of trial for re-evaluation as to her competency to proceed, (5) that the trial court erred by refusing to allow her to present evidence of her mental condition and treatment history, (6) that the trial court erred by not providing instructions to the jury relative to an insanity defense,  (7) that she was provided with ineffective assistance of counsel at trial, (8) that she was provided with ineffective assistance of counsel on appeal, and (9) that cumulative errors rendered her convictions constitutionally unreliable. This application was denied in the district court on November 17, 2005, and applications for supervisory review were subsequently denied by the

intermediate appellate court and by the Louisiana Supreme Court, with the latter court denying

review on March 9, 2007.  See State v. Hutchinson, 949 So.2d 432 (La. 2007).

On May 22,  2007, the petitioner filed the instant habeas corpus application in this Court.

The State asserts that a deferential review of the state court proceedings and findings, as

mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that the petitioner's claims must

be rejected.

The evidence adduced at trial reflects that, on the morning of December 2, 1996, the

petitioner drove to her parents' house, purportedly to confront her mother, when she coincidentally

encountered her mother's vehicle traveling toward her, being driven by her brother and occupied

by her mother and uncle.  The petitioner pulled in front of her mother's vehicle and both vehicles

came to a stop facing each other.  The petitioner then exited her vehicle carrying a rifle, placed the

rifle on the top of her car, pointed it at her mother's vehicle, and fired a shot at the vehicle.  At this

point, the petitioner's uncle exited the mother's vehicle and began to approach the petitioner,

whereupon the petitioner, after a brief exchange, turned the weapon and fired the rifle again, hitting

her uncle in the head and killing him.  According to the testimony of the petitioner's mother and

brother, the petitioner then fired an additional four or five shots while pointing the rifle at her

mother's vehicle as the vehicle retreated.  None of the bullets struck the retreating automobile or

the occupants thereof.  According to the testimony of the petitioner at trial, she fired at her uncle

believing that he was approaching in a threatening manner, and with regard to the shots fired at

her mother's vehicle, she did not entirely recall where she was aiming the rifle while she was firing.

Turning to a substantive review of the petitioner's claims, the standard for review in this

Court is that set forth in 28 U.S.C. § 2254.  Specifically relevant is 28 U.S.C. § 2254(d)(1), which

provides that an application for a writ of habeas corpus shall not be granted with respect to any

claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See also Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. See 28 U.S.C. § 2254(d)(1)-(2); Montoya v. Johnson, 226 F.3d 399 (5th Cir. 2000), cert. denied, 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. Montoya, supra, 226 F.3d at 404. See also Williams v. Taylor, supra, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claim, there is no basis for the granting of habeas relief in connection with this claim.

Addressing first the petitioner's claim that the evidence was insufficient to support the verdicts, the standard for testing the sufficiency of the evidence on federal habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Knox v. Butler, 884 F.2d 849, 851 (5th Cir. 1989), cert. denied, 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957

(1990).  This standard of review applies in both direct and circumstantial evidence cases.  Schrader

v. Whitley, 904 F.2d 282 (5th Cir.), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221

(1990).  In reviewing the sufficiency of the evidence under this standard, the federal habeas court

must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution

of conflicts in the evidence.  Knox, supra; Valles v. Lynaugh, 835 F.2d 126 (5th Cir. 1988);

Holloway v. McElroy, 632 F.2d 605 (5th Cir. 1980), cert. denied, 451 U.S. 1028, 101 S.Ct. 3019,

69 L.Ed.2d 398 (1981).  Further, the federal habeas court's consideration of the sufficiency of the

evidence is limited to a review of the record evidence adduced at the petitioner's state court trial.

Knox, supra; Young v. Guste, 849 F.2d 970 (5th Cir. 1988).  State law defines the substantive

elements of the offense, and a state judicial determination that the evidence was sufficient to

establish the elements of the offense is entitled to great weight on federal habeas review.  Hawkins

v. Lynaugh, 844 F.2d 1132 (5th Cir.), cert. denied, 488 U.S. 900, 109 S.Ct. 247, 102 L.Ed.2d 236

(1988); Porretto v. Stalder, 834 F.2d 461 (5th Cir. 1987).

      In the present case, the petitioner does not dispute that she pointed the gun and fired the

shot which struck her uncle in the head and killed him.  As a result, it does not appear that she

seriously contests the manslaughter conviction on grounds of insufficient evidence.  Rather, the

thrust of her argument -- relative to the attempted second degree murder conviction -- is that

although she admittedly fired shots in the direction of her mother's vehicle,  none of the shots hit

that car or its occupants, and since she was very close to her mother's car, the inference should

be drawn that she was not attempting to harm them and, so, may not be found guilty of attempting

to kill or commit great bodily harm.  She further suggests that the testimony of her mother and

brother was not credible, having been skewed because of "bad blood" existing between them.  In

this vein, she disputes their testimony that she placed the gun on the roof of her car, leveled it at

their vehicle prior to firing and continued to fire as they attempted to drive away.  It is not this

Court's function, however, to determine what the jury could have found if only it had viewed the

evidence differently.  Instead, the Court's role is to determine whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to prove every element of the crime beyond a reasonable doubt.  Further, in accordance with 28 U.S.C. § 2254(d), this Court is limited only to determining whether the Louisiana courts unreasonably applied the due process standards of Jackson v. Virginia, supra,  in affirming the petitioner's conviction.

The credibility of witnesses is a factual determination, and under 28 U.S.C. § 2254(e)(1), a determination of a factual issue shall be presumed correct.  The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.    In light of this standard, the Court finds no unreasonable application of Jackson v. Virginia and the Due Process Clause.  Viewing the evidence in the light most favorable to the prosecution, particularly the testimony of the mother and brother (the sole eyewitnesses to the incident other than the petitioner), to the effect that the petitioner specifically pointed the weapon at their vehicle as she fired, the jury could have believed, as found by the state appellate court on direct appeal, that "the evidence [was] sufficient to support a finding ... that the defendant had the specific intent to kill or inflict great bodily harm".  The mere fact that the petitioner did not hit the vehicle at which she was pointing does not establish that she was not attempting to do so.  Although the two vehicles were apparently close to each other when the petitioner began firing, the evidence was clear that the petitioner had little familiarity with firearms, having fired one only once before when she was much younger.  Accordingly, based upon the foregoing, this Court is unable to conclude that the state courts unreasonably applied the Due Process Clause and Jackson v. Virginia, supra, and the petitioner's application is without merit relative to this claim.

The petitioner next complains that the forty-year concurrent sentences in this case are excessive.  In this regard, the Eighth Amendment protects against cruel and unusual punishments. In order for the petitioner to establish cruel and unusual punishment in this case, she must establish that the punishment meted out to her was grossly disproportionate to the crimes she

committed.  Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); Solem v.

Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).  If the contested sentences fall within

the statutory limits, the sentences are entitled to a presumption of constitutionality and will not be

upset unless the sentences are so disproportionate to the offenses as to be completely arbitrary

and shocking.  Bonner v. Henderson, 517 F.2d 135 (5th Cir. 1975).  Excessive sentence claims are

analyzed as follows: First, a threshold comparison is made concerning the gravity of the offense

against the severity of the sentence.  If the sentence is grossly disproportionate to the severity of

the offense, then and only then, the court compares the sentence in question to (1) sentences for

similar crimes in the same jurisdiction, and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313 (5th Cir.), cert. denied, 506 U.S. 849, 113 S.Ct. 146, 121

L.Ed.2d 98 (1992).  If the sentence is not "grossly disproportionate," however, in the first instance,

the inquiry is finished.  United States v. Gonzales, 121 F.3d 928 (5th Cir. 1997), cert. denied, 522

U.S. 1063, 118 S.Ct. 726, 139 L.Ed.2d 664 (1998).

As the Supreme Court has noted, outside the context of capital punishment, successful

proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only

"extreme" or "extraordinary" cases.  Ewing, supra; Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct.

1166, 155 L.Ed.2d 144 (2003).

In the instant case, the petitioner was convicted of two violent crimes perpetrated with a

weapon against unarmed victims.  In Louisiana, the crime of manslaughter is punishable by up to

forty years in confinement, and the crime of attempted second degree murder is punishable by up

to fifty years in confinement.  The petitioner's concurrent forty-year sentences, therefore, were

within the statutory limit and were presumptively constitutional.  The petitioner has not established

that her sentences were "grossly disproportionate."  Since the sentences were not grossly

disproportionate, further inquiry into the proportionality of the sentences is unnecessary.  United

States v. Gonzales, supra; Smallwood v. Johnson, 73 F.3d 1343 (5th Cir.), cert. denied, 519 U.S.

883, 117 S.Ct. 212, 136 L.Ed.2d 146 (1996).  In short, the petitioner is not entitled to relief in connection with her excessiveness of sentence claim.

The petitioner next asserts, in assignment of error no. 3, that the trial court erred in failing or refusing to allow her to change her plea on the morning of trial to the dual plea of not guilty and not guilty by reason of insanity.  In related assignments nos. 5 and 6, the petitioner also asserts that the trial court erred in disallowing her attempt to introduce evidence of her mental health treatment and history at trial and in failing to charge the jury concerning the dual plea of not guilty and not guilty by reason of insanity.

The record indicates that on January 23, 1997, the petitioner appeared in open court for the purpose of arraignment in connection with the charges pending against her.  At that time, she exercised her right to stand mute, and upon her failure and refusal to enter a plea, the trial judge entered a plea of not guilty on her behalf in accordance with Louisiana procedural law.  Two months later, pursuant to motion thereafter filed by petitioner's counsel on March 21, 1997, the trial court appointed a sanity commission to examine the petitioner and to determine her competence to proceed to trial.[2]  In addition, the appointed physicians were requested to look into whether the petitioner had been sane at the time of the offenses.

Pursuant to the trial court's Order for a mental examination, the petitioner was evaluated by psychologists David Hale and psychiatrist Francisco Silva, who submitted their respective reports.  Thereafter, on May 15, 1997, an evidentiary hearing was conducted at which the two experts testified regarding their reports and findings.  It was the unequivocal opinion of both experts that the petitioner was competent to proceed to trial and to assist with her defense, notwithstanding

---

[2]  Although the defense motion also requested that the petitioner be examined with regard to her competence at the time of the offense and that her plea be changed to the dual plea of not guilty and not guilty by reason of insanity, the sole justification for such relief was the conclusory assertion by the petitioner's counsel that the petitioner "has had serious family relationship and societal problems."  The trial court rejected this request, as evidenced by excision of that part of the Order from the draft Order submitted by petitioner's counsel. (Record, p.163).

that she suffered with a probable "borderline personality disorder".  In addition, Dr. Silva testified that, whereas additional medical records might be "helpful" in determining whether the petitioner had been competent at the time of the offense, she had not represented to have been psychotic at that time, but rather had represented to have been merely nervous and to have overreacted when she encountered her mother's vehicle.  Based upon this testimony, the trial court determined that the petitioner was competent to proceed.  In addition, in light of testimony from the experts that the petitioner's mental state was somewhat fragile and that her mental health could potentially deteriorate with the stress of trial, the trial court noted that medication should be provided as needed and ordered that further evaluation should occur if warranted.

Finally, on the morning of trial, more than a year after arraignment, the prosecution was allowed to procedurally amend the indictment from one count of first degree and two counts of attempted first degree murder to one count of second degree and two counts of attempted second degree murder.  Although the trial court asked the petitioner at that time how she wished to plead to the amended indictment and although she responded that her plea was "not guilty and not guilty by reason of insanity", the court subsequently noted that the amendment to the indictment had been merely a procedural amendment which did not entitle the petitioner to enter a new plea. Accordingly, the court noted for the record that the petitioner's plea would remain "not guilty" to the charged offenses.  Although the petitioner's attorney noted an objection to this determination, it does not appear from the record that the petitioner's attorney asserted any form of motion seeking to change the petitioner's plea, that he sought to present any evidence in support of a change in plea, or that he advanced any argument as to why a change in plea was warranted.  As a result, the plea remained "not guilty", and subsequent attempts by the petitioner to introduce evidence at trial regarding her mental health treatment and history were disallowed, and no charge was given to the jury relative to the insanity defense.

Pursuant to article 561 of the Louisiana Code of Criminal Procedure, a criminal defendant is allowed to withdraw a plea of "not guilty" and enter a dual plea of "not guilty and not guilty by reason of insanity" within ten (10) days of arraignment. Thereafter, such a change of plea may be allowed only for good cause shown. A determination whether good cause has been shown to allow entry of the dual plea of not guilty and not guilty by reason of insanity is addressed to the sound discretion of the trial court. See State v. Sampson, 480 So.2d 952 (La. App. 2d Cir. 1985). The revision comments indicate that this rule was adopted to preclude a motion to change plea being filed as a dilatory tactic prior to trial and also to provide notice to the State in advance of trial that the defendant's mental health would be an issue at trial. A criminal defendant's burden of showing good cause to grant a motion to change her plea is logically seen to increase with each day as her trial date nears. See Jason v. Cain, 2006 WL 2949523 (E.D. La. Oct. 13, 2006). Further, a mere non-substantive amendment of an indictment or bill of information does not result in a corresponding need for re-arraignment or for entry of a new plea. See, e.g., State v. Jones, 587 So.2d 787 (La. App. 3d Cir. 1991).

In the instant case, the trial court did not err in rejecting the petitioner's attempt to amend the plea on the morning of trial.[3] She offered no cause for the change of plea, much less "good cause", and provided no evidentiary basis or other basis to the trial court for concluding that she was unable to differentiate between right and wrong at the time of the offense. As previously noted, the testimony of Dr. Silva at the sanity commission hearing was that the petitioner did not claim to have been psychotic at the time of the incident but claimed to have merely overreacted due to nervousness. Further, the report of Dr Hale states his belief that, "with reasonable scientific

---

[3]      The petitioner seeks to make much of the fact that she stood mute at her initial arraignment and, so, never actually entered a plea of "not guilty". She thus seeks to assert that her entry of a plea of "not guilty and not guilty by reason of insanity" on the morning of trial was not an attempt to change her plea but, rather, was her first real entry of a plea in the case. This argument is without merit. It is very clear from the colloquy at arraignment that the result of her decision to stand mute at arraignment would be the automatic entry of a "not guilty" plea by the trial court. See La.C.Cr.P art. 554. Thus, the petitioner effectively entered a plea of "not guilty" by choosing to say nothing at that time.

certainty ... the defendant was sane at the time of the reported offense."  Finally, a review of the evidence adduced at trial, including the lucid testimony of the petitioner, does not suggest any psychotic break in her actions.  The investigating sheriff's deputies described her as not seeming under the influence of alcohol or drugs upon arrest and as not being incoherent or unduly upset when they apprehended her shortly after the shooting.  She herself testified that she had a long-troubled and confrontational relationship with her mother, and that their relationship had been fraught with conflict and argument.  She testified that on the morning of the shooting, she dropped her husband off at work and her off son off at a sitter, returned home, and took a loaded gun from a rack in her house.  She was contemplating suicide and called her mother's house.  When her father answered the phone instead of her mother, she took the gun, went to her car and, after a period of sitting in the parking lot of a nearby convenience store, drove toward her mother's house with the stated intent of committing suicide while her mother watched.  The coincidental meeting of her and her mother's vehicles on the roadway then precipitated the petitioner's conduct in stopping, exiting the vehicle and firing the gun repeatedly in the direction of her mother's car. There is no suggestion that the petitioner was unable to tell right from wrong at the time of the offense.  Nor, more importantly, has the petitioner alleged or shown any prejudice resulting from the trial court's action in rejecting her amended plea.  Specifically, although there is ample indication that the petitioner had received psychiatric treatment in the past, notably for suicidal ideation, she has not made any showing to this Court, or even made any allegation, that she was not in fact legally sane at the time of the offense.  The absence of such allegation is fatal to the petitioner's claim.  See Volson v. Blackburn, 794 F.2d 173 (5th Cir. 1986) ("[Petitioner] has not alleged in his federal habeas corpus petition or in his brief in this Court that he actually was insane at the time of the offense.  Under the circumstances presented in the instant case, therefore, [petitioner] has not carried his burden of alleging, much less demonstrating, prejudice as a result of the state trial court's action.").  Accordingly, the petitioner has not demonstrated that the state

court's decision to reject her change of plea on the very morning of trial was contrary to, or involved an unreasonable application of, clearly established federal law, and this claim must be rejected.

Having concluded that the trial court did not err in disallowing a change of plea on the morning of trial, there was clearly no error in disallowing evidence during trial of the petitioner's prior mental health treatment and in failing to instruct the jury on the insanity defense.  Pursuant to article 651 of the Louisiana Code of Criminal Procedure, "[w]hen a defendant is tried upon a plea of 'not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible."  And article 802 provides that the judge shall charge the jury "as to the law applicable to the case," which law does not include elements of the insanity defense which has not been pled before the court.  Accordingly, these claims as well must fail.

Turning to the petitioner's next claim, she asserts that the trial court erred in denying a defense motion to re-evaluate her competence to proceed at trial and to assist with her defense. In this regard, the record reflects that the petitioner's attorney, immediately prior to choosing a jury on the morning of trial, represented to the court that the petitioner was having difficulty maintaining "her focus" on the proceedings.  He further reminded the Court that, at the sanity commission hearing conducted approximately a year previously, the examining physicians had opined that the defendant might benefit from medication and from additional mental health treatment.   The petitioner's counsel represented that, notwithstanding this recommendation, such medication and treatment had not been provided.  Other than these conclusory assertions, however, nothing was provided to support the petitioner's contentions, and the trial court summarily denied the defense motion.

It is a violation of due process to try and convict a defendant who lacks mental competence. Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Carter v. Johnson, 131 F.3d 452 (5th Cir. 1997). The constitutional standard for competency is whether a defendant has "sufficient present ability

to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

In order to protect the substantive right, a state must provide a defendant with procedures to ensure that an accused is not tried or convicted while incompetent. Holmes v. King, 709 F.2d 965 (5th Cir. 1983). Specifically, a trial court must conduct an inquiry into an accused's competence if the evidence raises a bona fide doubt as to competency. Carter, supra at n. 10. Different standards govern claims of the violation of the substantive and procedural competence requirements. Carter, supra, at 459; Lokos v. Capps, 625 F.2d 1258 (5th Cir. 1980). If a petitioner seeks federal habeas corpus relief on the substantive claim, i.e., if she asserts that she was tried while incompetent in fact in violation of her due process rights, the defendant must present facts sufficient to "positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to [her] mental competency at the time of trial." Carter, supra, at 460. The threshold burden is "extremely heavy." Johnson v. Estelle, 704 F.2d 232 (5th Cir. 1983).[4]

In contrast, a petitioner seeking federal habeas relief on the ground that her procedural rights were violated must be able to point to evidence presented to the trial court that raised a bona fide doubt about competency at the time of trial. Holmes, supra. The test in such case is an objective one based on what was known to the trial court at the time of trial, Carter, supra (indicating that "[i]f the trial court receives evidence, viewed objectively, that should raise a reasonable doubt about competency, yet fails to make further inquiry, this constitutes a denial of

---

[4]        Inasmuch as the petitioner in this case does not appear to claim a substantive violation, the Court need not address this issue. However, the Court notes, in any event, that the petitioner has failed to present any evidence to "positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to [her] mental competency at the time of trial." Carter, supra. No medical records from the hospital or the prison are contained in the record. And even the fact that a petitioner may be receiving treatment for mental health issues does not establish that the mental health problems are or were sufficiently severe as to make it likely that the petitioner is or was incompetent. See United States v. Teague, 956 F.2d 1427 (7th Cir. 1992) (indicating that fairly severe mental heal problems may need to be shown.).

a fair trial"). <u>See also</u> <u>Lokos v. Capps</u>, <u>supra</u>. The requirement that the trial court conduct further investigation, however, is not without limits, even after sufficient evidence to establish a bona fide doubt about competency has been presented. The fact-finding process must rest on procedures and evidence "sufficient to permit a trier of fact reasonably to assess an accused's competency against prevailing medical and legal standards." <u>Holmes</u>, <u>supra</u>. The adequacy of the procedures varies according to the existing "fact matrix", but the Fifth Circuit has "never suggested that a state court must conduct a full-blown competency hearing every time there is the slimmest evidence of incompetency." <u>Id.</u> <u>See also</u> <u>United States v. Horovitz</u>, 584 F.2d 682 (5th Cir. 1978).

Moreover, a trial court generally has discretion in deciding whether to hold a competency hearing. <u>United States v. Morgan</u>, 559 F.2d 397 (1977). When there is no reasonable cause to believe that the defendant may be incompetent, or when the motion for a mental examination is made frivolously or not in good faith, the court does not abuse its discretion in denying the motion. <u>See</u>, <u>e.g.</u>, <u>United States v. McEachern</u>, 465 F.2d 833 (5th Cir. 1972), <u>cert. denied</u>, 409 U.S. 1043, 93 S.Ct. 539, 34 L.Ed.2d 494 (1972); <u>United States v. Williams</u>, 998 F.2d 258 (5th Cir. 1993)(finding that trial court acted within its discretion in denying competency motion where the defendant supplied "only the bare allegation that he ha[d] a 'history of mental problems' and has been 'under medical and psychiatric care as well as medication'"). <u>See also</u> <u>United States v. Teague</u>, 956 F.2d 1427 (7th Cir. 1992)(upholding district court's failure to hold a competency hearing where defendant presented evidence that he was undergoing treatment for drug dependency and had been diagnosed four months previously with major depression, generalized anxiety, and borderline personality disorder because the district court was given no reason to believe that the defendant might be incompetent to stand trial.).

A state habeas court's competency determination is a question of fact entitled to a presumption of correctness. <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)(noting competency to stand trial is a "factual issue", the resolution of which is entitled to

"presumptive weight"); Carter, supra (holding that a state habeas court's decision regarding competency was entitled to a presumption of correctness). In the instant case, the trial court held a sanity hearing at the request of the petitioner prior to trial. At that hearing, it was the testimony of mental health experts that the petitioner was competent to proceed to trial. Thereafter, a year later and on the very morning of trial, the petitioner's attorney made the conclusory assertion that the petitioner was having difficulty focusing on the proceedings and requested a re-evaluation. Nothing was presented to the trial judge in the form of affidavit or medical documentation suggesting that the petitioner was not competent to proceed. In this Court's view, therefore, there was nothing presented to the trial court which created a bona fide doubt about the petitioner's competence so as to warrant a re-evaluation. Furthermore, the circumstances surrounding the petitioner's motion, including its last-minute nature and general lack of support, are valid reasons why a trial judge might conclude that the motion was a ruse or was made only for delay. See Williams, supra. See also Volson v. Blackburn, supra ("the state court reasonably could have concluded that the request was made solely for delay because Volson's attorney ... requested a sanity commission on the day of trial"). It is evident from the record that the trial court believed that the petitioner did not need a competency hearing. In light of this Court's limited standard of review, the discretion accorded a trial court's determination as to the necessity of a competency hearing based on the court's ability to directly observe the defendant, and the limited information before the trial court supporting the petitioner's assertions, this Court cannot state that it was a violation of clearly established federal law for the state court to deny the petitioner's motion for a sanity commission to re-evaluate the petitioner's competence on the morning of trial.

Turning to the petitioner's claim that she was provided with ineffective assistance of counsel, she complains that her appointed trial counsel was deficient in (1) failing to move for a continuance on the morning of trial, (2) failing to object to the trial court's ruling which excluded evidence of her mental health treatment and history at trial, (3) failing to request jury instructions

on the insanity defense, (4) failing to request enforcement of the court's order for additional psychological treatment, and (5) failing to seek to change the petitioner's plea prior to the morning of trial. In addition, the petitioner asserts that her appellate counsel was deficient for characterizing the petitioner as having entered a plea of "not guilty" at arraignment, thereby failing to address the fact that the petitioner never explicitly entered such a plea.

A habeas petitioner who claims ineffective assistance of counsel must affirmatively demonstrate:

> (1)   That her counsel's performance was "deficient", i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and
>
> (2)   That the deficient performance prejudiced her defense, i.e., that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must make both showings in order to obtain habeas relief based upon an alleged ineffective assistance of counsel. Id. To satisfy the deficiency prong of the Strickland standard, the petitioner must demonstrate that her counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. Martin, supra, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the petitioner satisfies the first prong of the <u>Strickland</u> test, her petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. <u>Earvin v. Lynaugh</u>, 860 F.2d 623 (5th Cir. 1988), <u>cert. denied</u>, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989).  To satisfy the prejudice prong of the <u>Strickland</u> test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. <u>Strickland</u>, <u>supra</u>, 466 U.S. at 693, 104 S.Ct. at 2067.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. <u>Martin</u>, <u>supra</u>, 796 F.2d at 816.  The habeas petitioner need not show that her counsel's alleged errors "more likely than not" altered the outcome of the case, she must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." <u>Id.</u> at 816-17.

In the instant case, the petitioner first asserts that her counsel was deficient for failing to seek a continuance on the morning of trial, after the trial judge denied a request for re-evaluation of the petitioner's mental competence to proceed.[5]  This claim is clearly without merit.  There is no reason to believe that the trial court, having determined that a re-evaluation of the petitioner's competency was not warranted, and with the jury venire awaiting voir dire, would have granted a continuance for the purpose of pursuing such re-evaluation.  An attorney is not obligated to undertake a futile act in fulfilling his obligation to his client. <u>See Koch v. Puckett</u>, 907 F.2d 524 (5th Cir. 1990)("This Court has made clear that counsel is not required to make futile motions or objections.").

The petitioner next complains that her trial attorney was deficient for failing to object when the trial court disallowed evidence regarding the petitioner's mental health treatment history.  This claim is also clearly without merit.  At trial, upon direct questioning of the petitioner's sister, the

---

[5]     Although not listed as an enumerated issue, the petitioner points out that her trial counsel was disbarred effective in January, 1999. There is no suggestion in the record, however, that her attorney engaged in conduct with the petitioner similar to that which justified the disbarment, nor that that conduct, or the resulting disciplinary proceedings, had any impact upon the representation provided by counsel to the petitioner.

petitioner's attorney sought to elicit a history of the petitioner's treatment at several mental health facilities, at which point counsel for the State objected. After a discussion outside the presence of the jury, the trial court ruled that such testimony was inadmissible. As is clear from the record, the petitioner's counsel then entered an objection to this ruling and assigned error. Record at p. 403. Accordingly, it appears that the petitioner's attorney did in fact object to the Court's ruling in this regard. Moreover, as previously noted above, the trial court did not err in excluding this testimony in light of article 651 of the Louisiana Code of Criminal Procedure which provides that, "[w]hen a defendant is tried upon a plea of 'not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible." Accordingly, any objection to the trial court's exclusion of such evidence and testimony would have been futile and is not a basis for finding ineffective assistance of counsel.

The petitioner next complains that her trial attorney was deficient for failing to seek a special jury instruction on her proposed insanity defense and failing to object to the trial court's failure to provide such instruction. Again, however, such a request would have been futile. In the absence of a dual plea of "not guilty and not guilty by reason of insanity", the insanity defense was not legally applicable to the petitioner's case and, accordingly, there was no basis for either requesting an instruction to the jury relative to the petitioner's mental state at the time of the offense or in objecting to the failure to provide such an instruction. Accordingly, this claim is without merit and must be denied.

The petitioner also complains that her trial attorney failed to seek enforcement of the trial court's order, issued at the insanity hearing, directing that the petitioner obtain additional mental health treatment as needed after the hearing. The petitioner provides no argument, no briefing, and no factual development whatever in connection with this contention. In any event, the record reflects that at the sanity hearing, the two expert mental health providers testified that, while the petitioner was clearly competent to proceed to trial, her mental state was such that her condition

might potentially deteriorate prior to trial, and to this end, they recommended that she receive additional monitoring and scheduled treatment. Their assertions with regard to future deterioration, however, were entirely speculative, and there is no indication whatever in the record, other than the petitioner's attorney's conclusory assertions on the morning of trial, suggesting that she did not in fact receive additional treatment or medication while incarcerated or that she was actually incompetent to proceed. Nor does she now assert or provide evidentiary support for an assertion that she was in fact unable to understand the nature of the proceedings or assist in her defense. Accordingly, the Court finds no support for this contention and cannot conclude that the trial court erred in rejecting this claim.

The petitioner next complains that her trial attorney was ineffective for failing to seek to change her plea from "not guilty" to "not guilty and not guilty by reason of insanity" at an earlier point in the proceedings. However, the record is clear that the petitioner decided to stand mute at her arraignment, thereby necessitating the entry of a plea of "not guilty" by the trial court. At a later point in the proceedings, her attorney appropriately sought appointment of a sanity commission to inquire into both her competence to proceed to trial and her sanity at the time of the offense. This inquiry was conducted, and both mental health experts opined that there was no serious question regarding the petitioner's sanity at the time of the offense. Inasmuch as Louisiana procedural law requires a showing of good cause for a change of plea after arraignment, inasmuch as good cause has been interpreted to be some legitimate question regarding the petitioner's sanity, and inasmuch as the sanity commission found no legal or factual basis for concluding that the petitioner was legally insane at the time of the offense, there is no basis for concluding that the trial court would have granted an earlier-filed motion to change the petitioner's plea. Nor has the petitioner come forward at the present time with any allegation, evidence or affidavit to suggest that she was in fact legally insane at the time of the offense. Accordingly, the petitioner is unable to show either

deficiency in her counsel's performance in failing to seek relief which likely would not have been granted or any likelihood of prejudice resulting from her counsel's actions.

Finally, the petitioner complains that her appellate counsel was deficient for failing to raise the issue of her purported entry of a plea, on the morning of trial, of "not guilty and not guilty by reason of insanity". According to the petitioner, she sustained prejudice resulting from this failure. However, it appears that in the petitioner subsequently-filed application for post-conviction relief in state court, she was able to fully argue and brief this assertion regarding the purported entry of a dual plea at re-arraignment. There is no suggestion in the record that the trial court failed to consider this argument in denying her application at the district court level nor that the appellate courts did not consider this claim on application for supervisory review.   Accordingly, it is the Court's finding that the petitioner has failed to establish any prejudice resulting from this alleged failure or that her appellate attorney was ineffective in the manner in which she describes, and the Court finds that the petitioner has failed to establish any deficiency in her attorney's performance relative to this claim.

Finally, the petitioner complains that "cumulative errors" at trial rendered the proceedings fundamentally unfair. Federal habeas relief is available, however, only for cumulative errors that are of a constitutional dimension. Livingston v. Johnson, 107 F.3d 297 (5th cir.), cert. denied, 522 U.S. 880, 118 S.Ct. 204, 139 L.Ed.2d 141 (1997). Further, the reviewing court must find that the errors "so infected the entire trial that the resulting conviction violates due process." Derden v. McNeel, 978 F.2d 1453 (5th Cir. 1992)(en banc), cert. denied, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993). The court must review the record as a whole to determine whether the errors more likely than not caused a suspect conviction. Spence v. Johnson, 80 F.3d 989 (5th Cir.), cert. denied, 519 U.S. 1012, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996). The petitioner has not identified any specific errors of constitutional dimension, and a review of the entire record by this Court does not lead to the conclusion that the petitioner's convictions are constitutionally suspect. Accordingly,

we cannot say that the state habeas court's rejection of the petitioner's cumulative error claim was objectively unreasonable as a matter of law.

Based upon the foregoing, this Court concludes that the petitioner's application for habeas corpus relief in this Court is without merit and should be dismissed.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the petitioner's application for habeas corpus relief be dismissed, with prejudice.

Baton Rouge, Louisiana, this _____ day of May, 2009.


**DOCIA L. DALBY**
**MAGISTRATE JUDGE**